1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARIANNE PAUL AND ROBERT PAUL,

Plaintiffs,

v.

HOLLAND AMERICA LINE, INC., *et al.*,

Defendants.

CASE NO.  C05-2016RSM

MEMORANDUM ORDER
GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on defendants' Motion for Partial Summary Judgment (Dkt. #28), requesting an Order that any recovery to which plaintiff Marianne Paul might be entitled be limited to 46,666 Special Drawing Rights ("SDRs"), pursuant to the Athens Convention, and that Robert Paul's claim for loss of consortium be dismissed because that claim is not recognized under general maritime law.

Plaintiffs argue that defendants' limitation of liability clause was not reasonably communicated, and therefore, it is without force.  (Dkt. #34).  Plaintiffs further argue that defendants waived the defense by failing to plead it, defendants' motion is improper because it cannot dispose of a claim, and the State of Washington recognizes loss of consortium so the claim is

ORDER
PAGE - 1

1  proper by defendants' own contract.

2      For the reasons set forth below, the Court disagrees with plaintiffs and GRANTS

3  defendants' motion for partial summary judgment.

4                              **II.  DISCUSSION**.

5      **A. Background**

6      In March 2004, plaintiffs embarked on a cruise from Buenos Aires, Argentina to Santiago,

7  Chile, on Holland America Line vessel ms AMSTERDAM.  Plaintiff Marianne Paul alleges that near

8  the end of her cruise she became ill, exhibiting symptoms of fatigue and stomach cramping.

9      Plaintiffs disembarked on March 31, 2004, and returned home to San Diego, California.

10  Over the subsequent weeks, plaintiff Marianne Paul continued to experience symptoms of fatigue

11  and cramping.  On May 25, 2004, she collapsed in her home and was rushed to the hospital.

12  Emergency room doctors discovered that she was suffering from a complete heart block and severe

13  cardiomyopathy.  Surgery was performed to remove the block and to insert a temporary pacemaker.

14  A permanent defibrillator was later implanted.

15      Plaintiffs believe that Marianne Paul's heart failure was due to an echovirus contracted

16  aboard the ms AMSTERDAM during her cruise.  On December 5, 2005, they filed the instant

17  action alleging negligence, negligent infliction of emotional distress and loss of consortium, and

18  praying for damages in an amount in excess of $280,000.

19      The instant motion followed.  Defendants ask the Court to determine whether plaintiffs'

20  contract of carriage limits plaintiffs' recovery, if any, against defendants for negligence, and asking

21  this Court to dismiss Robert Paul's claim for loss of consortium.

22      **B. Summary Judgment Standard**

23      Summary judgment is proper where "the pleadings, depositions, answers to interrogatories,

24  and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

25  any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ.

26

ORDER
PAGE - 2

1   P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).   The Court must draw all

2   reasonable inferences in favor of the non-moving party.  *See F.D.I.C. v. O'Melveny & Meyers*, 969

3   F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994).  The moving party has

4   the burden of demonstrating the absence of a genuine issue of material fact for trial.  *See Anderson*,

5   477 U.S. at 257.  Mere disagreement, or the bald assertion that a genuine issue of material fact

6   exists, no longer precludes the use of summary judgment.  *See California Architectural Bldg.*

7   *Prods., Inc., v. Franciscan Ceramics, Inc*., 818 F.2d 1466, 1468 (9th Cir. 1987).

8          Genuine factual issues are those for which the evidence is such that "a reasonable jury could

9   return a verdict for the non-moving party."  *Anderson,* 477 U.S. at 248.  Material facts are those

10   which might affect the outcome of the suit under governing law.  *See id.*  In ruling on summary

11   judgment, a court does not weigh evidence to determine the truth of the matter, but "only

12   determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc*., 41 F.3d 547, 549

13   (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).  Furthermore, conclusory or

14   speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment.

15   *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995).

16   Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in

17   summary judgment motions.  *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th

18   Cir. 1980).

19          Here, the parties appear to agree that this matter should be resolved by summary judgment.

20          **C.  Applicable Law**

21          A cruise line passage contract is a maritime contract governed by federal maritime law.

22   *Wallis v. Princess Cruises*, 306 F.3d 827, 834 (9th Cir. 2002).  A limitation of liability provision is

23   incorporated into a passenger ticket contract where the carrier "'reasonably communicated to its

24   passengers that the contractual term affects their legal rights.'"  *Mills v. Renaissance Cruises*, 1993

25   A.M.C. 131 (N.D. Cal. 1993) (citation omitted).  The question of whether such provision was

26

1    reasonably communicated to the passenger is a question of law for the court, and depends on an

2    analysis of the overall circumstances of the case.  *Id.*

3    **D. Enforceability of Liability Limitation**

4        The Ninth Circuit employs a two-pronged "reasonable communicativeness" test to

5    determine under federal common law and maritime law when the passenger of a common carrier is

6    contractually bound by the fine print of a passenger ticket.  *Wallis*, 306 F.3d at 835 (citations

7    omitted).  The Court looks at the overall circumstances on a case-by-case basis, "'with an

8    examination not only of the ticket itself, but also of any extrinsic factors indicating the passenger's

9    ability to become meaningfully informed of the contractual terms at stake.'"  *Id.* (citation omitted).

10       The first prong of the reasonable communicativeness test focuses on the physical
         characteristics of the ticket.   Here we assess 'features such as size of type,
11       conspicuousness and clarity of notice on the face of the ticket, and the ease with
         which a passenger can read the provisions in question.'

12   *Wallis*, 306 F.3d at 836 (internal quotations and citations omitted).  In the instant case, plaintiffs

13   contend that their tickets were "crammed with text in an eye-straining 1/16th inch font or 8-point

14   font . . . , printed over images and watermarks," and therefore were neither sufficiently conspicuous

15   nor clear enough to have been reasonably communicated.  The Court disagrees.

16       The passenger contract begins on page 13 of plaintiffs' travel documents packet.  In large,

17   capital letters on the right hand side of each odd-numbered page of that contract appears the work

18   "CONTRACT."  (Dkt. #29, Ex. B).  In the lower right-hand side of page 13 is stated "Issued

19   subject to the terms and conditions on this page and the following pages.  Read terms and

20   conditions carefully."  (Dkt. #29, Ex. B).  Page 14 consists of an "important notice to passengers"

21   in large, capital letters, stating that the document is a legally binding contract subject to the terms

22   and provisions contained in the document, and directing the passenger to pay particular attention to

23   clauses governing limitations of legal rights.  (Dkt. #29, Ex. B).  The liability limitation provision

24   itself is found on page 23 of the booklet, and is set forth under the title "Governing Law,

25   Transferability, Separability."  The provision is printed in small type over other images.

26

ORDER
PAGE - 4

1     The Court finds the physical characteristics of the ticket in this case are such that the terms

2  and conditions are sufficiently conspicuous to the passenger.  *See Wallis*, 306 F.3d at 836; *Mills*,

3  1993 A.M.C. at 133.  Although the reference to the Athens Convention liability limitation is buried

4  in paragraph 14 in small type, the "important notice" warning advises the passenger that certain

5  provisions limit his or her legal rights.  The courts of this circuit and others have consistently found

6  tickets with similar physical features to have provided reasonable notice that contractual terms are

7  contained therein.  *Wallis*, 306 F.3d at 836; *Mills*, 1993 A.M.C. at 133; *Effron v. Sun Line Cruises,*

8  *Inc.*, 67 F.3d 7 (2d Cir. 1995); *Spataro v. Kloster Cruise, Ltd.*, 894 F.2d 44 (2d Cir. 1990); *Hodes*

9  *v. S.N.C. Achille Lauro ed Altri-Gestione*, 858 F.2d 905 (3d Cir. 1988); *McQuillan v. "Italia"*

10  *Societa Per Azione Di Navigazione*, 386 F. Supp. 462 (S.D.N.Y. 1974).

11     The second prong of the reasonable communicativeness test requires the Court to evaluate

12  the circumstances surrounding the passenger's purchase and subsequent retention of the

13  ticket/contract.  *Wallis*, 306 F.3d at 836.  "The surrounding circumstances to be considered include

14  the passenger's familiarity with the ticket, the time and incentive under the circumstances to study

15  the provisions of the ticket, and any other notice that the passenger received outside of the ticket."

16  *Id.* (citation omitted).  This prong allows a more subjective examination of the "'extrinsic factors

17  indicating the passenger's ability to become meaningfully informed.'" *Id.* (citation omitted).

18     Plaintiffs argue that their contract was confusing because it alternatively referred to the

19  Athens Convention and to the laws of the United States.  Plaintiffs also argue that they would have

20  to research and read the terms of the Athens Convention, its amendments, the monetary units in the

21  amendments and the International Monetary Fund to determine the rate of conversion.  In *Wallis*,

22  the Ninth Circuit Court of Appeals found that a limitation provision failed to meet the second prong

23  for these very reasons.  *Wallis*, 306 F.3d at 836-38.

24     However, in stark contrast to the provision in *Wallis*, the provision at issue here identifies

25  the relevant limitation of 46,666 SDRs, and therefore, the passenger need only visit the International

26

ORDER
PAGE - 5

1  Monetary Fund website to view the current value of an SDR in American dollars.  Moreover, as

2  other courts have noted, the test is whether plaintiffs knew that the contractual term affected their

3  legal rights.  *Mills*, 1993 A.M.C. at 133.  "Although the monetary limitation is given in the form of

4  an international monetary unit due to the fact that the passengers will be drawn from an

5  international pool, the fact that it is a monetary limitation and that the value of the limitation is

6  '46,666' is clear.  The language provided is sufficient to put plaintiffs on notice of the liability

7  limitation."  *Id.*

8        Furthermore, the Court finds nothing confusing about the contract's reference to the Athens

9  Convention as well as the laws of the United States.  The contract adequately explains that any

10 cruise that does not begin, end or call at a port in the United States of America shall be governed by

11 the Athens Convention, otherwise the contract shall be governed by the general maritime law of the

12 United States.  (Dkt. #29, Ex. B).  The Court agrees with defendants that plaintiffs could easily

13 determine from that language that the Athens Convention applied to their cruise because it did not

14 begin, end or call at a port in the United States of America, having originated in Argentina, cruised

15 around Cape Horn at the southern tip of South America, and ended in Santiago, Chile.

16 Accordingly, the Court finds that the provision was reasonably communicated to plaintiffs is

17 enforceable as a matter of law.

18

19        *1.  Incorporation of Athens Convention*

20        Plaintiffs' argument that the Athens Convention cannot be used to limit liability because

21 neither the United States nor Amsterdam have signed on to the Convention does not compel a

22 different conclusion.  It is true that since neither the Athens Convention nor the 1976 Protocol have

23 been ratified by the United States, they carry no force of law.  *Mills*, 1993 A.M.C. at 136.

24 However, the limitation of liability provision has force because it is properly incorporated into the

25 contract.  *Id.*  Therefore, the Court rejects plaintiffs' argument.

26

ORDER
PAGE - 6

1

### 2. Waiver

2       Likewise, the Court is not persuaded by plaintiffs' argument that defendants have not

3   referenced the Athens Convention as the basis for any of their affirmative defenses, and therefore

4   have waived it. Defendants have pled that plaintiffs' claims are barred and/or limited by contract.

5   That is sufficient for Rule 8 purposes to rely on the Athens Convention in this motion. *See Buttice*

6   *v. G.D. Searle & Co.*, 938 F. Supp. 561, 565 (E.D. Mo. 1996).

7

### 3. Propriety of Partial Summary Judgment

8       Finally, the Court finds plaintiffs' argument that defendants' motion is improper because it

9   does not resolve any entire claim or defense without merit. Federal Rule of Civil Procedure 56

10  specifically allows a party against whom a claim is asserted to move for summary judgment in the

11  party's favor "as to all or any part thereof." Fed. R. Civ. P. 56(b).

12  **E. Loss of Consortium Claim**

13      Defendants have also moved this Court for an Order dismissing Robert Paul's loss of

14  consortium claim because such claim is not allowed under general maritime law. Plaintiffs respond

15  that Robert Paul should be allowed to pursue his loss of consortium claim because defendants'

16  contract specifically allows it. The Court does not agree with plaintiffs. The Ninth Circuit Court of

17  Appeals has already determined that loss of consortium claims are not cognizable in cases governed

18  by general maritime law. *See Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1408 (9th Cir.

19  1994). Therefore, the Court finds that summary judgment in favor of defendants is appropriate, and

20  will dismiss Robert Paul's loss of consortium claim.

21  ### III. CONCLUSION

22      Having reviewed defendants' motion for partial summary judgment (Dkt. #28), plaintiffs'

23  opposition (Dkt. #34), defendants' reply (Dkt. #38), the declarations and exhibits in support of

24  those briefs, and the remainder of the record, the Court hereby ORDERS:

25      (1) Defendants' Motion for Partial Summary Judgment (Dkt. #28) is GRANTED. For the

26

reasons set forth above, the Court finds that:

      a.  Any recovery of damages by plaintiff Marianne Paul, if any, shall be limited to 46,666 Special Drawing Rights; and

      b.  Robert Paul's claim for loss of consortium is DISMISSED and Robert Paul is hereby TERMINATED as a plaintiff to this action.

      (2)  The Clerk shall forward a copy of this Memorandum Order to all counsel of record.

      DATED this _6th __ day of November, 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 8