UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIANNE PAUL and ROBERT PAUL,<br><br>Plaintiffs,<br><br>v.<br><br>HOLLAND AMERICA LINE, INC., *et al.*,<br><br>Defendants. | CASE NO.  C05-2016RSM<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on defendants' Motion for Summary Judgment, which asks the Court to dismiss plaintiffs' remaining negligence claim. (Dkt. #45). Defendants argue that plaintiffs are unable to establish the causation element of their claim. Plaintiffs respond that a genuine issue of material fact exists as to whether plaintiff Marianne Paul became ill as a result of any negligence on the part of defendants, and therefore summary judgment is not appropriate. (Dkt. #55). For the reasons set forth below, the Court agrees with plaintiffs and DENIES defendants' motion for partial summary judgment.

## II. DISCUSSION

**A. Background**

In March 2004, plaintiffs embarked on a cruise from Buenos Aires, Argentina to Santiago,

ORDER
PAGE - 1

Chile, on Holland America Line vessel ms AMSTERDAM. Plaintiff Marianne Paul alleges that near the end of her cruise she became ill, exhibiting symptoms of fatigue and leg cramping.

Plaintiffs disembarked on March 31, 2004, and returned home to San Diego, California. Over the subsequent weeks, plaintiff Marianne Paul continued to experience symptoms of fatigue and cramping. On May 25, 2004, she collapsed in her home. Plaintiff Robert Paul, her husband, discovered her in the bathroom adjacent to their bedroom. Mrs. Paul did not appear to be breathing and her face was purple. Mr. Paul called 911 and Mrs. Paul was rushed to the hospital. There, emergency room doctors discovered that she was suffering from a complete heart block and severe cardiomyopathy. Surgery was performed to remove the block. A permanent defibrillator was later implanted.

Before, during and after the cruise, Mr. and Mrs. Paul took part in shore excursions and local tours. On those occasions they came into contact with numerous other passengers and local residents, and ate and drank various foods and beverages. Mrs. Paul maintains that she drank only bottled water or hot coffee while off the ship, and that she ate only "safe" foods that had been cooked.

Defendants now ask the Court to dismiss plaintiffs' negligence claim, asserting that, because of plaintiffs' contacts off the ship, plaintiffs cannot establish a proximate cause between any alleged negligence on their part and the echovirus alleged to have caused plaintiffs' harm. Defendants further allege that plaintiffs have failed to demonstrate any negligence on their part.

**B. Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969

ORDER
PAGE - 2

F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257.  Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.  Material facts are those which might affect the outcome of the suit under governing law.  *See id.*  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).  Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995).  Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th Cir. 1980).

**C. Motions to Strike**

As a threshold matter, defendants have asked the Court to strike both of plaintiff's proffered expert opinions.  The Court addresses each of these requests in turn below.

*1. Mr. Costa's Opinions*

Defendants first ask the Court to strike the opinion of Mr. Roy E. Costa.  Mr. Costa is a public health sanitarian consultant, and has opined that Mrs. Paul contracted an echovirus on the ms AMSTERDAM as a result of inadequate sanitary practices.  (Dkt. #59).  Defendants argue that Mr. Costa is not qualified to give this opinion because he is not a doctor, and because he has failed to identify any relevant facts upon which he bases his opinion.

In *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court explained that district courts should play a gatekeeper role with respect to expert testimony. *See Daubert*, 509 U.S. at 589; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996). The Supreme Court explained that "[t]he primary locus of this obligation is Rule 702, which clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify." *Daubert*, 509 U.S. at 589. As guidance, the court discussed four factors it deemed relevant to the determination of whether certain expert testimony should be admitted:

> Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested. . . . Another pertinent consideration is whether the theory or technique has been subjected to peer review and publication. . . . Additionally, in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation. . . . Finally, 'general acceptance' can yet have a bearing on the inquiry. A 'reliability assessment does not require, although it does permit, explicit identification of a relevant scientific community and an express determination of a particular degree of acceptance within that community.' Widespread acceptance can be an important factor in ruling particular evidence admissible, and 'a known technique which has been able to attract only minimal support within the community,' may properly be viewed with skepticism.
> . . .
> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity -- and thus the evidentiary relevance and reliability -- of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Daubert*, 509 U.S. at 595 (citations omitted).

Further, the *Daubert* court instructed district judges to be aware of other evidentiary rules in assessing expert testimony. For example, Rule 703 allows experts to rely upon facts or data that aren't admissible into evidence when forming their opinions or inferences, so long as the facts or data are of a type reasonably relied on by experts in the particular field. Fed. R. Evid. 703.

In the instant case, defendants fail to point to any specific qualification that Mr. Costa is

ORDER
PAGE - 4

lacking, nor do they provide any expert opinion that Mr. Costa's qualifications are insufficient. Mr. Costa was retained to assist in determining Mrs. Paul's exposure to echovirus and whether it was contracted through inadequate sanitation practices on the ms AMSTERDAM. Plaintiffs note that Mr. Costa will testify regarding what the probable source of the infection was and why. Mr. Costa has devoted his professional career to public sanitation, concentrating on outbreaks of food borne and environmental pathogens. He built his opinions on the facts of this case, and his inferences drawn from those facts. As plaintiff notes, an opinion is not inadmissible simply because defendants disagree with its conclusion. Accordingly, the Court declines to strike Mr. Costa's declaration.

   *2. Dr. Dahlgren's Opinions*

Defendants next ask this Court to strike the opinions of Dr. James Dahlgren. Dr. Dahlgren concurs with Mr. Costa's conclusions. While defendants disparage the method by which Dr. Dahlgren came to his conclusion, the Court declines to strike his opinions as well. Dr. Dahlgren appears to have considered all of the facts of this case, and gave the weight he felt was appropriate to all of those facts. He followed a methodology set forth in the Federal Judicial Center's Reference Manual. He then integrated what is known about echoviruses, the medical data he received about Mrs. Paul, and what he learned about Mrs. Paul's practices and customs on and off the ship, along with the data he received about defendants' sanitation practices, and formed his opinions. Defendants have not persuaded this Court that those opinions are unsound.

**D. Negligence and Proximate Cause**

Plaintiffs allege that, as a result of the negligence of defendants, Mrs. Paul contracted an echovirus aboard the ms AMSTERDAM and suffered extensive and continuing injuries.[1] To recover for negligence, a plaintiff must establish: (1) duty; (2) breach; (3) causation; and (4) damages. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1070 (9th Cir. 2001). With respect to the duty

---

[1] This Court has previously dismissed Mr. Paul's claims for negligent infliction of emotional distress and for loss of consortium.

ORDER
PAGE - 5

owed, "[i]t is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959); *Catalina Cruises, Inc. v. Luna*, 137 F.3d 1422, 1425 (9th Cir. 1998).

In the instant case, defendants argue that plaintiffs cannot establish causation, and, therefore, their claim must fail as a matter of law. Specifically, defendants argue that plaintiffs cannot isolate Mrs. Paul's illness to a single source or sources. Defendants assert that it is just as likely, if not more likely, that she contracted her virus while she traveled in Buenos Aires and the Argentina countryside before her cruise, or while she traveled in Chile after the cruise. Defendants provide expert opinions in support of their argument from Dr. Robert Wheeler and Dr. Megan Murray. Dr. Wheeler opines that echoviruses are not commonly found on cruise ships, echoviruses are typically acquired in the general population, echoviruses are more common in populations with sanitation standards and resources inferior to those in the United States, and the sanitation practices in effect on the ms AMSTERDAM met and exceeded those set out in the Vessel Sanitation Program Operations Manual 2000. He concluded that there is no evidence of any gastrointestinal or respiratory outbreak aboard the ms AMSTERDAM during the cruise of March 19-31, 2004, nor any indication that Mrs. Paul contracted an echovirus infection while aboard the ship. (Dkt. #43, Ex. A). Dr. Murray also concluded that there is no evidence that Mrs. Paul contracted an echovirus on board the ms AMSTERDAM and that there is no evidence of an echovirus outbreak on the ship either before or after the Pauls' cruise, and concurred with Dr. Wheeler that echoviruses are not common on cruise ships. (Dkt. #44, Ex. A).

Plaintiffs respond that their experts have concluded that it is more likely than not that Mrs. Paul contracted an echovirus on board the cruise ship. They point to Mrs. Paul's custom and practices with respect to ingesting food and drink off the cruise ship, the number of respiratory and gastrointestinal illnesses contracted by passengers and crew on their own cruise, as well as the

cruises taking place immediately before and immediately after their cruise, and to reports of sanitation violations on previous and subsequent cruises. As noted above, plaintiffs' experts opine that Mrs. Paul contracted an echovirus on the ms AMSTERDAM as a result of inadequate sanitary practices. (Dkts. #58 and #59). On these bases, plaintiffs assert that a trier of fact could reasonably conclude that defendants' negligence was the cause of Mrs. Paul's illness, and this claim is not appropriately decided on summary judgment.

In order to establish that defendant was negligent, there must be a causal connection between the alleged breach of duty and the resulting injury. "Summary judgment is rarely granted in maritime negligence cases because the issue of whether a defendant acted reasonably is ordinarily a question for the trier of fact. In negligence cases, questions concerning foreseeability and causation particularly lend themselves to decision by a jury." *Wyler v. Holland Am. Line - United States, Inc.*, 348 F. Supp. 2d 1206, 1209 (W.D. Wash. 2003) (citations omitted). The Court agrees with plaintiffs that they have raised a genuine issue of material fact with respect to causation in this action.

Plaintiffs have produced evidence of similar illnesses contracted by passengers and crew on their cruise, and the cruises immediately before and immediately after theirs. Plaintiffs have also produced evidence of sanitation violations aboard the cruise ship. While the Court acknowledges that there is no evidence of sanitation violations during plaintiffs' cruise, and that there is no evidence of any passenger or crew member contracting the same echovirus during plaintiffs' cruise, plaintiffs have produced expert witnesses with valid opinions about the connection between similar illnesses contracted by other passengers and crew and about the connection between sanitation practices on board the Pauls' cruise and other cruises on the same ship. In addition, plaintiffs' experts have established the characteristics of Mrs. Paul's medical condition and they considered everything known through discovery about the condition and the pathogen that caused the condition. They then ruled out exposure sources in the relatively distance past and the distance future from the Pauls' cruise, while Mrs. Paul was not on board the ms AMSTERDAM. Finally, they looked at the

common transmission routes of echoviruses and opined as to the source of the infection.

While defendants do not agree with these opinions, the Court finds that defendants' primary arguments go to the weight, not the admissibility, of the experts' testimony. Further, the Court is not persuaded by defendants' reliance on *Pettit v. Celebrity Cruises*, 153 F. Supp.2d 240 (S.D.N.Y. 2001). In that case, the court particularly noted that plaintiffs had failed to provide any expert witness testimony, and ultimately concluded that plaintiffs had failed to establish any evidence upon which a reasonable jury could find proximate cause. For the reasons set forth above, the Court finds that this is not such a case. Accordingly, the Court finds that a reasonable trier of fact could conclude that the ms AMSTERDAM was the source of Mrs. Paul's infection, and that the infection was transmitted as a result of defendants' negligent sanitization practices. Thus, summary judgment in favor of defendant is not appropriate.

### III. CONCLUSION

Having reviewed defendants' motion for summary judgment, plaintiffs' opposition, defendants' reply, the declarations and exhibits in support of those briefs, and the remainder of the record, the Court hereby ORDERS:

(1) Defendants' Motion for Summary Judgment (Dkt. #45) is DENIED.

(2) The Clerk shall forward a copy of this Memorandum Order to all counsel of record.

DATED this 21st day of December, 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 8